Good morning, may it please the Court. My name is Jason Steed. I represent Robert Alexander, the plaintiff and appellant in this case. I'd like to reserve three minutes for rebuttal. There are three reasons that the District Court's summary judgment is to be reversed in this case, and I'll move from the narrowest to the broadest. The reason for reversal for the narrowest reason is that the District Court failed to follow this Court's decision in Snow. Snow holds that if there's evidence that a defendant was hostile to or acted out of animus toward the user or patient, then that is evidence in regards to a fact question. So that would probably only apply to Dr. Gulick, right? What about the other three doctors? Is your argument that Snow should apply to the other three doctors as well, or just Dr. Gulick? That holding in Snow would apply just to Dr. Gulick. If the evidence of hostility or animus is only for Dr. Gulick, that's the narrowest reversal. It is only with expertise to Dr. Gulick. You're on your right. Alexander filed an opening brief, though, saying were he challenged in the summary judgment on Shelton and Hanson and Grunewald, as well as Gulick. So there are four defendants who are still at issue in this case. And a broader reason for reversal that pertains to all four defendants is that the District Court, throughout, when it addresses each of those four defendants, imposes this burden on Alexander that he should establish that the treatment that was provided by these defendants was medically unacceptable. And that's an incorrect burden for this kind of case, because this isn't the kind of case where we're talking about alternative courses of treatment. This is a denial, delay, or interference with treatment case. If it's a denial case, then that's to show he didn't get any treatment. And he was getting some treatment throughout the entire period, wasn't he, at least to pain killers? Yes, there was some treatment, but he was going in for repeatedly. And sometimes it was for a recommended, you know, one physician would recommend, for example, steroid injections for the pain. He would go in to get those and be denied, or they would be delayed. Or on many, many occasions, he was going in saying the medication that he had been given is inadequate. So if he was getting some treatment, then I think you really do have a claim of dispute about whether that treatment was appropriate versus the other treatment. He was requesting not a denial of treatment. That is certainly how the State is trying to frame the case, to make it seem like it's an alternative course of treatment kind of case. The Snow opinion is actually very useful for this. In Snow, if the Court looks at Section 2A and 2B of the Snow opinion, in Snow, the plaintiff was making claims very similar to Alexander's claims in this case. In Snow, the plaintiff had severe pain related to hip problems. And was being delayed or denied hip surgery. But was complaining constantly of the severe pain. And the Snow, the Court in Snow, in Section 2A, says this is a denial, delay, or interference of treatment kind of case. There's evidence that treatment was being denied or delayed. Even though there was pain medication and that sort of thing being offered, surgery was being denied or delayed. And the Court treated it like that kind of case. And there's no discussion of whether the offering of medication was medically unacceptable. And the Court says, sorry, judgment's improper for this denial or delay kind of claim. And in Section B, the Court in Snow notes that the defendants were making the same argument that the State makes here, which is that these are alternative courses of treatment. And the plaintiff has to prove that the course of treatment that was being offered was medically unacceptable. And the Court in Snow says, look, even if we frame the claim that way, sorry, judgment was still unacceptable and it goes through, or improper, and it goes through and provides a slightly different analysis saying, yes, there was evidence that providing only the medication was medically unacceptable, et cetera, et cetera. But the point of that is that the Snow opinion shows that there are two slightly different analyses that are applied, depending on what kind of claim we have. And the Court seems to believe that the claim in Snow is really a denial or delay kind of claim and belongs under that 2A analysis, which doesn't involve the medically unacceptable requirement. The other argument we would make is that if Alexander does have to provide some kind of evidence that what was being done was medically unacceptable, the evidence that the individual defendants were denying or delaying treatment in some way, whether it was injections or an interstitial surgery or interstitial medication, the evidence that shows that that was being done with deliberate indifference amounts to evidence that what they were doing was medically unacceptable. In other words, medically unacceptable is another kind of spin on deliberate indifference. If doctors are deliberately refusing treatment or delaying treatment. But I think you still have this problem of showing that the care was inadequate. So if a doctor really doesn't like this patient and has animosity, but gives them perfectly the best treatment anyone could ever ask for, I don't think you have a constitutional claim for denial of medical care and tempered indifference. I think that's right if all the evidence shows that they got the best care that they could ask for. But the evidence here on Alexander's side, and all the evidence has to be construed in Alexander's favor, Alexander's presenting evidence that this was not adequate care. But that is to show that it was not acceptable care. And I think you're trying to argue you don't have to show that. But I'm not sure what your evidence is that this care that he got, which included surgery and lots of treatments and lots of assessments, was not adequate care. Because he continued to suffer severe pain for months and months, for several years. In many instances, the surgery or the care that he did receive was delayed by months or even years, or depending on which particular treatment we're talking about, there was serious delay. In the meantime, he was suffering severe pain and complaining repeatedly of severe pain and not getting responses from the defendants. So I'm saying under the sort of categorical approach that seems to be, at least in this case, presents an opportunity for the court to maybe clarify that there are these two categories of inadequate medical care in cases. There's no opinion indicates that. But it hasn't really been clarified in the law. I thought, can you know, that a lot of the reasoning was about these people not really having the relevant expertise and not really being doctors in the relevant field and ignoring the experts more. But your client doesn't have those kind of allocations, does he? Well, at least with regard to some treatments and some defendants. So, for example, Dr. Gulick, there was one doctor who had prescribed these steroid injections, and Dr. Gulick just failed or refused to provide those injections for months. And that's one physician who is not the specialist, basically ignoring the recommendation or the prescription of a doctor who was a specialist saying he needed this. So there is that kind of evidence. There's some kinds of evidence. Surgery is the same thing. There's evidence that he qualified for surgery and needed surgery, but the surgery was delayed for a year because certain defendants didn't take the steps, the next steps necessary to test that he were needed that showed that he needed the surgery and that he should get the surgery. But the evidence indicates, again, construed in Alexander's favor, that he would have gotten that surgery as much as a year earlier had they responded the way that they needed to respond. So it's true that he received treatment. And it's true, and that's part of the problem here, too, is he doesn't want to say the treatment he received was unacceptable. He wanted the treatment. He was seeking more treatment. So to ask him to prove that that was unacceptable medical treatment is a little incongruous with what it is he's after. He's saying, I wanted additional treatment because I wasn't getting all the treatment I needed and I was being either denied or delayed from getting the additional treatment. So to ask him to say it was medically unacceptable for the treatment he got is not quite incongruous with what the claim he's making. The Duguzi case is the sort of quintessential alternative course of treatment case where the plaintiff says, you gave me this medication, you should have given me this other medication. And that's the case, that's the line of cases where the court has said, if there's an alternative course of treatment kind of argument or claim that's being made, then you have to show that the course of treatment that was actually offered was medically unacceptable. And in the Duguzi case, if I remember correctly, the medication that the plaintiff was given, I think he actually kind of died as a result of it. And so there was this question about whether the course of treatment that he was given was unacceptable. Does the Duguzi case have time for a rebuttal? Yeah, I'll go ahead and issue a rebuttal. May it please the Court that I shall offer the Oregon Department of Corrections. We ask the Court to affirm. The court argument today is that words, even those as harsh, outrageous as plaintiff or legislator, do not amount to be a commitment violation in the absence of medically unacceptable care. And so for that reason, this case reduces to the question of whether there's undisputed facts that establish as a matter of law that the plaintiff received adequate care. In our view, Dr. Kimmel's medical care was adequate, because it was consistent with the care provided by other doctors, although agreed that it was difficult to treat patients, because although he contained a sense of pain and subjective symptoms, there were often no objective indications that matched those symptoms that allowed for them to create a treatment plan. And so for that reason, they adopted what we call a cautious and incremental approach to try and figure out what sort of treatment was appropriate. And throughout the course of his complaints, he was receiving some kind of treatment. And many of the doctors disagreed about what was appropriate, but they were all trying to manage his complaints. And so there's no medically unacceptable care. Everything here was within the range of acceptable medical conduct. What about the other two doctors? I think that they were also trying to – there's no evidence to them, and they also were part of this sort of course of care where they were providing – they were also trying to provide care. And so that was the outline of their brief. What about – what is your response to what your opposing counsel was talking about, where Dr. Bouza, who I believe was more of a specialist, recommended steroid injections, and Dr. Gould didn't give them? I have two responses to that. And I think a lot of these – he provided a lot of facts, and if you look more closely at the record, it reveals that the doctors were trying their best here. And so in response to this, my first answer is that the record shows that Dr. Goulick asked for approval to give these steroid injections, and because of the way that ODOT procedures work, it's a committee that has to approve these sorts of things. There is, in the record, a request he sent to the care committee, and they did not approve it. They asked for some other things to happen before that. And so for that reason, Dr. Goulick was not able to provide that injection. And my other answer to that is that if you look at the plaintiff's whole complaint, he later complains that Dr. Goulick shouldn't have given him these injections because he actually made his condition worse. So these answers to that, I'm not sure how we can show any harm for DOAC. What about the reduction of the marotten dosage later, around the time of the statements that reflected animus? So admittedly, if you accept the evidence, it's true. That happens at the same time as when Dr. Goulick said, reduce your medications for some unreasonable reason. Again, the record shows that the only reduction was he was receiving initially 600 milligrams three times a day, and it was reduced to 800 milligrams three times a day. Now, that's not consistent with the animus. I mean, if the court feels like that's a problem and wants to remand for factual findings on that limited course of conduct, we can do that, and I'm sure I would be very surprised if we couldn't provide evidence that that reduction was motivated by some medically acceptable reason. Would you need a trial on that to determine whether that was a medically acceptable reason? If this court agrees that that justifies the remand, then I think the court has to take evidence. But we don't think that this is a difference of, I guess, 600 milligrams a day, you know, medication taken three times a day versus two times a day, the amount of medication that you can vary. It just doesn't seem consistent in our view that that is any sort of meaningful reduction that could be consistent with animus. So we don't think that a trial is necessary. But if that meaningful reduction, in your view is, and the court's view is. Are you conceding that there's error here? Out of respect? Well, I'm listening to what you're saying, and you seem to be inviting a remand for focus on this particular issue. What's your best argument in favor of an affirmance based on the absence of deliberate indifference here? With regard to this particular product, Your Honor, or more generally? I'm focusing on what appeared to me to be a concession by the state that there must be a mistake here with respect to the adjustment of the dosage. I'm saying that there is not a mistake. I'm saying that this difference of this reduction from 800 milligrams, from 600 milligrams three times a day to 800 milligrams three times a day, is simply not medically acceptable. It's not consistent with animus. Even if this was accompanied by an unprofessional or acrimonious statement, it simply is not medically acceptable as a matter of law. Does the state have a medical expert saying that was an appropriate reduction in dosage? We do not, Your Honor. We're just asking this court to hold it as a matter of, I'm not sure, common sense or just as a matter of law that a reduction like this works out to a reduction of 200 milligrams a day is simply not actionable. And that's not a concession, Your Honor. I'm just saying that if the court disagrees, a limited remand and only a limited remand would be appropriate. It was a 200 milligram reduction. Is that the dosage variance? Yes, I understand. The record as I read it is it was reduced, as this court found, from 600 milligrams three times a day to 800 milligrams two times a day. And, you know, to the extent that plaintiff relies on snow, I think we just want to explain that in that case, there was a unique medical opinion that the SIP surgery was needed, and there were doctors who said, in fact, there was no other course of treatment that would be acceptable. And there was no doctor that said, pharmacological treatment is pain management is acceptable, and that was the treatment that was provided. And that's very different from this case. There's no experts saying that any one particular treatment was required here and that no other treatment was acceptable. And so whereas in snow there was an issue of fact, that's what the medical standard of care was, here there is this issue of fact, because the only evidence was all these doctors saying that it's difficult to stay patient, and these are the things that we did. If the court has any further questions, we ask that you affirm, or in the event that you choose to remand, we ask for a very limited remand with clear instructions that allows the district court to know specifically what it needs to take evidence on. Thank you. We'll give you two minutes here. So everything that the state is talking about is not evidence? It's all about? Does your client have any evidence or testimony that when the neurotin was reduced he experienced more pain? He has his own testimony that he's repeatedly complaining of ongoing chronic pain. Greg, can you point me to anywhere where he said when that reduction happened he experienced more pain? I would have to check the exact chronology, but I can tell you that the record's clear that at times after the reduction he was still complaining about pain and not getting treatment for his pain. So where in the record are those complaints about pain after the reduction? I would have to check the records. I can provide records to the court if you want me to. My statement of facts lays out the whole chronology, so if you find the part in our brief where he talks about the reduction in pain medication by Dr. Gulick, you will see that there are times after that where he's continuing to complain about severe pain and continuing to complain, but that's not being addressed. And I think, again, the point here is that everything the state is talking about is if you look at the evidence. Well, if you have to go look at the evidence and construe it in the state's favor, then that's exactly the opposite of what's supposed to be done in summary judgment. Alexander is presenting evidence. Do you have an expert who says that that reduction in the dose was inappropriate? No, we don't have an expert. But what we have is evidence that Alexander's complaining of severe pain, ongoing severe pain. Testimony from Alexander himself that Dr. Gulick said, I'm reducing your evidence or your dosage, basically as retribution for filing a lawsuit and that kind of stuff, which is evidence that what he was doing was not a medical decision, but was animus or something that was motivated by it. What are you saying? Suggesting that he shouldn't have done it, that they didn't increase the dosage back up or what? So I'm almost out of time. I'll try to answer this question. The Alexander's burden here is to have summary judgment, is to present evidence that he was denied or delayed treatment or his treatment was interfered with in a way that amounts to deliberate interference. With this kind of difference, I'm just trying to understand if there was something that was clear that they should have been doing, that there's some evidence that, for example, if they had just upped the dosage again back to what it was, he would have been okay. I think if that was the evidence, if he went in and complained with severe pain and the response was to up the dosage of his pain medication, he would have a much harder time saying you were deliberately indifferent to my needs. But what he's presenting is evidence that I'm going in constantly complaining of severe pain, and they're either doing nothing to change my treatment, or in this particular instance, the doctor's actually reducing my pain medication and telling me that if you follow up. Does the record indicate that the prescription was continually extended? Yeah, the pain medication was maintained for the most part. At most times, he had some kind of pain medication. But again, this is not, Alexander doesn't have to prove no treatment to have a claim for inadequate treatment. There can be all kinds of treatment. There still is a claim that the treatment was inadequate. But then doesn't he need some evidence, medical evidence that the treatment was inadequate medically? So in case law, there are a lot of cases saying that complaints of severe pain, that amounts to a serious medical condition that requires some kind of response. But if he did respond, they gave him pain medication and surgery and various other injections and other things. But if he goes in and he says, I'm getting this pain medication, but it's not enough. I'm still in severe pain. I'm having trouble walking. There's one instance where he actually, they find him unconscious because it appears he's fainted as a result of the severe pain. But they don't do anything to change his medication. And that's the equivalent of no treatment. That's the equivalent of no response. Just maintaining the same pain medication in the face of ongoing complaints of severe pain is the equivalent of no treatment. It's no response. And the difference that a prisoner has is they can't go to another doctor to get some kind of additional treatment. So for these reasons, it's important to refer to SOPI check. Thank you, Counsel. And thank you for taking this pro bono assignment. We really appreciate your assistance. Thank you, Counsel, on both sides for cases submitted.
judges: O'scannlain, Fisher, Friedland